IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

SHARON MITCHELL, as Administratix     *
of the Estate of Annie Ruth       *
Mitchell, ROBERT L. WADKINS,     *
                                    *
Plaintiffs,                   *
                                    *
v.                               *      Case No. 4:04-CV-62 (CDL)
                                    *
STATE FARM MUTUAL AUTOMOBILE     *
INSURANCE COMPANY,           *
                                    *
Defendant.                  *

O R D E R

Defendant State Farm Mutual Automobile Insurance Company ("State Farm") has filed a motion for summary judgment on Plaintiffs' claims of fraud, negligent misrepresentation, unjust enrichment, and promissory estoppel.  Defendant filed counterclaims for declaratory relief and specific performance; it also seeks summary judgment on its counterclaims.  For the following reasons, Defendant's motion is granted as to all claims and counterclaims.

**I.   BACKGROUND**

Plaintiff Sharon Mitchell is the administratix of the estate of Annie Ruth Mitchell.  On August 2, 2000, Annie Ruth Mitchell was rear-ended by Janet LaFortune, a State Farm insured, while traveling on I-185 in Columbus.  Mitchell hired Plaintiff Robert L. Wadkins, an attorney, to represent her with respect to the accident around September 19, 2000.

In June 2001, Wadkins sent a $21,000.00 settlement demand to State Farm claim representative Judy Cowart.  Wadkins listed Mitchell's medical expenses as totaling $7,956.25 in his letter to State Farm, but did not include copies of Mitchell's bills.  He also acknowledged in his letter that Mitchell had been diagnosed with ovarian cancer while being treated for her accident-related injuries and that it was difficult to determine from the medical bills which charges related to her treatment for the accident.

In July 2001, claims representative Tracy Spear took over Mitchell's claim.  She reviewed Wadkins' previous letter and began obtaining Mitchell's medical records, with the assistance of Wadkins. By October 19, 2001, Spear had compiled the documents she needed to evaluate Mitchell's claim, and then used an "injury claim trainer" to assist her in analyzing the medical bills.  Based on the analysis of the bills, Spear concluded that $1,477.75 of Mitchell's medical bills arose from her treatment for accident-related injuries.  She contacted Wadkins on December 12, 2001, with this information and to respond to his settlement offer.  Initially, she left a message at Wadkins' office offering to settle the claim for $3,000.00.  Later that day, she spoke with Wadkins, and they mutually agreed to settle the claim for $4,000.00.  According to State Farm's policies, Spear had the authority to settle this claim without seeking her manager's approval because it was less than $10,000.00.  No other State Farm representative participated in the negotiation of this claim.

2

During her review of Mitchell's medical bills, Spear noted that Medicare had covered the cost of Mitchell's medical treatment. For that reason, Spear believed that Medicare might file a lien against Mitchell's claim and that State Farm could be liable if it did not ensure that Medicare was reimbursed or if it did not protect itself from liability by obtaining an indemnification from Mitchell. Spear contacted Medicare on December 13, 2001 to discuss any pending lien. At that time, she was told that Mitchell's file would be assigned to a coordinator of benefits who would review it to determine whether a lien should be filed. Spear was also warned that the process would take several months. On the following day, she sent a letter to Wadkins, confirming the $4,000.00 settlement agreement and informing him of the potential Medicare lien.

For the next seventeen months, Spear attempted to contact Medicare regarding the lien, as evidenced by her activity log for the Mitchell claim file. She also testified that in November 2002, she contacted Wadkins' office and left a message requesting that he execute a release containing lien indemnification language.[1] He did not return her call or contact her at any other time. In May 2003, during one of her unsuccessful attempts to obtain information on the lien, Spear was informed by Medicare that Mitchell had died in November 2002.

_____

[1]Wadkins contends that Spear never contacted him regarding an indemnification agreement.

3

By June 2003, Spear decided to place the Mitchell claim on inactive status, noting in her activity log that she had not received information on the lien from Medicare and that Wadkins was not pursuing the claim. She also noted that she would close the file if she did not receive any additional information by October 2003.[2] In September 2003, Spear received a letter from Wadkins asking about the status of the Medicare lien.

According to Spear, she was not sure how to respond to Wadkins' letter because: (1) she had still not received any information from Medicare; (2) the claim was now over two years old; and (3) Wadkins had not pursued the claim. For that reason, Spear contacted her manager, Morris Plott, for his instructions. Plott was also unsure of State Farm's obligations; although Spear had settled the claim, he knew that the issue of the Medicare lien had prevented her from paying out the funds and that the statute of limitations on the claim had expired prior to Mitchell's death.

Plott contacted outside counsel for State Farm, Douglas Vassy, and met with him around October 1, 2003. The details of their conversation were not memorialized in any way. Both men recall that Plott asked Vassy about the effect of the statute of limitations on Mitchell's claim. However, it seems there may have been

---

[2]According to Spear, labeling the claim file as inactive or closed did not mean that she would be unable to make a payment on the claim in the future; it simply meant that she would no longer actively work on or monitor the claim.

miscommunication among the men about the factual circumstances of the claim.  Plott recalls telling Vassy that Spear had agreed to settle the claim; Vassy does not recall being told this, and only remembers that he was told that Mitchell had died after the statute of limitations expired.  In any event, both men agree that the end result of the consultation was that Vassy told Plott that the statute of limitations would bar Mitchell's claim if she died after the limitations period ended.  Plott passed this information on to Spear and instructed her to respond by letter to Wadkins' previous inquiry by informing him that because Mitchell died on November 11, 2002, after the limitations period on her claim ended on August 2, 2002, it was State Farm's position that the claim was barred by the statute of limitations.  Wadkins responded to Spear's letter by filing suit along with his co-plaintiff, administratrix for Mitchell's estate, on April 16, 2004, in the Superior Court of Muscogee County.[3]

    In February 2004, Medicare finally informed State Farm that it had a lien in the amount of $2,433.28.  When State Farm was served with the complaint in this case a few months later, it was apparently its first notice that it may have incorrectly denied Mitchell's claim. Upon further review, State Farm determined that it had erred and tendered the settlement amount with interest to Plaintiffs, which Plaintiffs refused.

---

[3]Wadkins testified that he called Spear after receiving her letter to respond to her contention that the claim was time-barred.  Spear does not recall the conversation and did not note it in her activity log.

5

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate only if there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  After an adequate time for discovery has passed and a motion for summary judgment is made, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case," on which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

## III. DISCUSSION

### A.   Fraud

To prevail on her fraud claim, Plaintiff must establish the following essential elements:

> (1) that the defendant made the representations; (2) that at the time he knew they were false (or what the law regards as equivalent of knowledge); (3) that he made them with the intention and purpose of deceiving the plaintiff; (4) that the plaintiff relied on such representations; (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made.

6

*Lister v. Scriver*, 216 Ga. App. 741, 745, 453 S.E.2d 83, 86 (1995). Under Georgia law, "'[q]uestions of fraud and bad faith are ordinarily for a jury.'" *Cash v. Preferred Risk Ins. Co.*, 155 Ga. App. 228, 228, 270 S.E.2d 391, 392 (1980). "However, a party asserting fraud must introduce some evidence from which an inference of fraud may be drawn in order to make an issue." *Leachman v. Cobb Dev. Co.*, 229 Ga. 207, 209, 190 S.E.2d 537, 538 (1972). If no reasonable jury could find the existence of one or more essential elements of a claim for fraud, Defendant is entitled to summary judgment on that claim.

Plaintiffs' claim of fraud is based on statements made by State Farm, via Spear, on December 12 and 14, 2001, regarding settlement of Mitchell's claim for $4,000.00. Plaintiffs allege that at the time of the agreement, State Farm did not intend to pay out the claim if the statute of limitations ran before it issued the check. Under Georgia law, "'[a] promise made without a present intent to perform is a misrepresentation of a material fact and is sufficient to support a cause of action for fraud.'" *Howard v. Hammond*, 216 Ga. App. 703, 706, 455 S.E.2d 390, 392 (1995). Plaintiffs contend that State Farm's corporate policy was to renege on settlement agreements once the statute of limitations ended, if no funds had been issued on the claim. Here, Plaintiffs allege that because the Medicare lien was involved, State Farm also knew that the statute was likely to run before it paid out Mitchell's claim.

Plaintiffs have not produced any evidence in the form of records

7

or documents that this is a corporate practice of State Farm, either through an official written policy or through records of other claimants being treated in a similar way.[4]  Therefore, Plaintiffs rely on the testimony of Plott, Vassy, and Mike Allen, a State Farm team manager, to demonstrate State Farm's intent at the time the settlement was made.  Reading their testimony as a whole and construing all reasonable inferences in favor of Plaintiff, the Court finds that no reasonable jury could conclude that State Farm had the intention of not fulfilling the settlement agreement when it was made.  Since Plaintiffs have failed to produce sufficient evidence from which a reasonable jury could conclude or infer that at the time the settlement agreement was formed State Farm lacked the intent to perform its obligations under the agreement, Plaintiff cannot make out an essential element of its fraud claim.  *See Equifax, Inc. v. 1600 Peachtree, LLC*, 268 Ga. App. 186, 195, 601 S.E.2d 519, 525-26 (2004) ("[A]ctionable fraud [does not] result from a mere failure to perform promises made.  Otherwise, any breach of contract would amount to fraud.").  Based on the foregoing, Defendant is entitled to summary judgment on Plaintiff's fraud claim.

### B.  Negligent Misrepresentation

To establish a claim for negligent misrepresentation, a plaintiff must show: "(1) the defendant's negligent supply of false information

---

[4]Mike Allen, in response to questioning, testified that he did not recall any other claim in which State Farm reached a settlement agreement, but refused to pay the claim after the statute of limitations ran.

to foreseeable persons, known and unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Hardaway Co. v. Parson, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426, 479 S.E.2d 727, 729 (1997). Plaintiff has failed to produce evidence from which a reasonable jury could conclude that Defendant made any false representations regarding the settlement agreement. Therefore, summary judgment in favor of Defendant is required on this claim.

### C.   Unjust Enrichment and Promissory Estoppel

Plaintiffs acknowledge that these theories of recovery are inapplicable if an express contract exists, *see Ga. Tile Distribs., Inc. v. Zumpano Enters., Inc.*, 205 Ga. App. 487, 491, 422 S.E.2d 906, 908 (1992), and also acknowledge that if the Court finds Defendant did not commit fraud, then these claims are not viable. Based upon the above rulings, summary judgment is also granted as to these claims by Plaintiffs.

### D.   Specific Performance and Declaratory Relief

Defendant has counterclaimed for a declaration that the settlement agreement is enforceable and seeks specific performance of the agreement. Because the Court finds that no reasonable jury could conclude that Plaintiffs were fraudulently induced into entering the settlement agreement, summary judgment in favor of Defendant on its counterclaims is granted.

9

**IV.   CONCLUSION**

Based upon the foregoing, Defendant's Motion for Summary Judgment as to Plaintiffs' claims of fraud, negligent misrepresentation, unjust enrichment, and promissory estoppel is granted.  The Court also grants Defendant's Motion for Summary Judgment as to its counterclaims for declaratory judgment and specific performance.  The settlement agreement entered into by the parties is enforceable and binding, and Plaintiffs are ordered to fulfill their obligations under it.

IT IS SO ORDERED, this 7th day of July, 2005.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

10